**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN BOSCO, Individually and On Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CANOPY GROWTH CORPORATION, MARK ZEKULIN, BRUCE LINTON, MIKE LEE, and TIM SAUNDERS,<br><br>Defendants. | CASE NO. 1:19-cv-11341-LAK-JLC |
| JONATHAN JAY, Individually and On Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>CANOPY GROWTH CORPORATION, BRUCE LINTON, MARK ZEKULIN, MIKE LEE, and TIM SAUNDERS,<br>Defendants. | CASE NO. 1:20-cv-00485 |

**MEMORANDUM IN SUPPORT OF ROBERT POLLOCK'S MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT ROBERT POLLOCK AS LEAD PLAINTIFF, AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

Page:

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

ARGUMENT ................................................................................. 6

I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS ............................... 6

II.   MR. POLLOCK IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT
SHOULD APPOINT HIM LEAD PLAINTIFF ...................................................... 7

      A.    Mr. Pollock Filed a Timely and Procedurally Complete Motion for Lead Plaintiff
      ........................................................................................ 11

      B.    Mr. Pollock Has the Largest Known Financial Interest in the Relief Sought ..... 12

      C.    Mr. Pollock "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23 .. 13

            1.    Mr. Pollock's Claims Are Typical of the Claims of All the Class
            Members ...................................................................... 13

            2.    Mr. Pollock Will Adequately Represent the Class ............................... 14

III.  THE COURT SHOULD APPROVE MR. POLLOCK'S CHOICE OF LEAD COUNSEL ................... 15

CONCLUSION ............................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

Page(s):

**Cases**

*Daniels v. City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001) ........................................................................ 13-14

*Ferrari v. Impath*,
   No. 03-5667, 2004 U.S. Dist. LEXIS 13898,
   2004 WL 1637053 (S.D.N.Y. July 15, 2004) ........................................................ 14

*Herrgott v. U. S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*,
   306 F.3d 726 (9th Cir. 2002) ....................................................................... *passim*

*Hom v. Vale, S.A.*,
   No. 15-9539, 2016 U.S. Dist. LEXIS 28863,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ............................................................. 1

*In re Aol Time Warner Sec. & "erisa" Litig.*,
   MDL No. 1500, 2003 U.S. Dist. LEXIS 145,
   2003 WL 102806 (S.D.N.Y. Jan. 8, 2003) .............................................................. 8

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ......................................................................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................ 12

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ........................................................................... 2

*In re Heritage Bond Litig.*,
   MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386,
   2004 WL 1638201 (C.D. Cal. July 12, 2004) ........................................................ 14

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000) .............................................................................. 15

*In re Nortel Networks Corp.*,
   No. 01-1855, 2002 U.S. Dist. LEXIS 1633,
   2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) .......................................................... 15

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................. 9

*In re Star Gas Sec. Litig.*,
   No. 04-1766, 2005 U.S. Dist. LEXIS 5827,
   2005 WL 818617 (D. Conn. Apr. 8, 2005) ............................................................. 8

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   No. 15-7658, 2018 U.S. Dist. LEXIS 191439,
   WL 5849466 (D.N.J. Nov. 7, 2018) ................................................................. 6

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................ 8, 11

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11-0917, 2011 U.S. Dist. LEXIS 54939,
   2011 WL 2078010 (S.D.N.Y. May 19, 2011) ................................................ 12

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   No. 08-7281, 2008 U.S. Dist. LEXIS 95506,
   2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) .................................................. 8

*Kux-Kardos v. VimpelCom, Ltd*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) ............................................................. 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................... 8, 10-11

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) .................................................................... 6

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ......................................................................... 13

*Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................... 9

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................ 7, 8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) .................................................................. 10

**Statutes**

15 U.S.C. § 78 ................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 6 ........................................................................................ 12

Fed. R. Civ. P. 23 .................................................................................. 13-15

Fed. R. Civ. P. 42(a) .................................................................................... 1

**Other**

Wright & Miller, *Consolidation—Discretion of Court*,
    9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ..............................................................6

## **PRELIMINARY STATEMENT**

Robert Pollock ("Mr. Pollock" or "Movant") respectfully submits this Memorandum of Law in support of his motion to: (i) consolidate the related securities class actions filed against Canopy Growth Corporation ("Canopy" or the "Company") and certain related Defendants (defined below); (ii) appoint him Lead Plaintiff of the present securities class action pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (iii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.[1]

As outlined below, and as described in his Certification and Loss Chart, Mr. Pollock has suffered substantial losses in connection with his acquisitions of Canopy securities between September 8, 2017 and November 13, 2019, inclusive (the "Class Period"). *See* Declaration of Melinda A. Nicholson in Support of Robert Pollock's Motion to Consolidate Related Actions, Appoint Robert Pollock as Lead Plaintiff, and Approve Proposed Lead Plaintiff's Choice of Counsel ("Nicholson Decl."), Exs. 1-2 (Robert Pollock Certification and Loss Chart).[2]

---

[1]      The related securities class actions pending in this Court are *Bosco v. Canopy Growth Corporation, et al.*, No. 1:19-cv-11341-LAK (S.D.N.Y.) (the "*Bosco* Action"), filed on December 11, 2019, and *Jay v. Canopy Growth Corporation, et al.*, No. 1:20-cv-00485 (S.D.N.Y.) (the "*Jay* Action"), filed on January 17, 2020.

On November 20, 2019, another action was filed in the United States District Court for the District of New Jersey, *Ortiz v. Canopy Growth Corporation, et al.*, No. 2:19-cv-20543-KM (D.N.J.) (the "*Ortiz* Action"). Mr. Pollock is moving for lead plaintiff in the *Ortiz* Action simultaneously herewith and, should he prevail, intends to seek to transfer and consolidate the *Ortiz* Action with this action. 28 U.S.C. § 1404(a); Fed. Rule Civ. P. 42.

[2]      The *Bosco* and *Jay* Actions allege a Class Period between September 8, 2017 and November 13, 2019 on behalf of purchasers of Canopy securities. The *Ortiz* Action alleges a Class Period between June 21, 2019 and November 13, 2019 on behalf of purchasers of Canopy securities. All dates are inclusive. For the purpose of this Motion, Movant adopts the most expansive Class Period – *i.e.*, the Class Period set forth in the *Bosco* and *Jay* Actions. *See, e.g., Hom v. Vale, S.A.*, No. 15-9539, 2016 U.S. Dist. LEXIS 28863, at *12-13, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper for purposes of the present [lead plaintiff] motion[s] because the longer class

**Specifically, Mr. Pollock has suffered approximately $284,692.73 in losses as a result of his transactions in Canopy stock during the Class Period.** To the best of his knowledge, Mr. Pollock has sustained the largest loss of any movant seeking to be appointed Lead Plaintiff.

What is more, as further outlined in Mr. Pollock's Certification, he fully understands his duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action. *See* Nicholson Decl., Ex. 1. Finally, Mr. Pollock satisfies the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is therefore presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Accordingly, Mr. Pollock respectfully requests that the Court (1) consolidate all related actions; (2) appoint Mr. Pollock as Lead Plaintiff; and (3) approve Mr. Pollock's choice of KSF as Lead Counsel for the Class.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant Canopy engages in the production, distribution, and sale of cannabis in Canada and operates through two segments—Cannabis Operations and Canopy Rivers. Canopy is a Canadian corporation with its principal executive offices located in Smiths Falls, Canada.

During the Class Period, Defendant Mark Zekulin ("Zekulin") served as the Company's President until June 27, 2018, when he was additionally named Co-Chief Executive Officer ("CEO") of the Company. Zekulin served in this capacity until July 3, 2019, when he became sole CEO of the Company and stepped down as its President. Subsequent to the end of the Class Period, Zekulin announced his intention to leave the Company within the calendar year. Defendant Bruce Linton ("Linton") is the founder of Canopy, and served as its Chairman and

---

period encompasses more potential class members and damages."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

[3] These facts were derived from the complaints filed in the *Bosco* and *Jay* Actions.

CEO since before the start of the Class Period until June 27, 2018 when he became Co-CEO of the Company, serving in that capacity until July 3, 2019. Defendant Mike Lee ("Lee") served as Canopy's Acting Chief Financial Officer ("CFO") since June 1, 2019, and thereafter has served as CFO on a permanent basis. Defendant Tim Saunders ("Saunders") served as Canopy's Executive Vice-President and CFO since before the start of the Class Period until June 1, 2019.[4]

Canopy shares began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "CGC" on May 24, 2018, before which the Company's shares traded publicly under the ticker symbol "WEED" on the Toronto Stock Exchange ("TSX"), and under the ticker symbol "TWMJF" on the OTC Pink market ("OTC").

Throughout the Class Period, the Company consistently highlighted its growth and increased production capacity designed to capitalize on growing market demand, touting Canopy's position as a market leader with the largest customer base in the legal Canadian cannabis market.

On July 3, 2019, however, the Company issued a press release announcing a "leadership transition," wherein the Company and Defendant Linton jointly "announced" that Defendant Linton would "step down" as co-CEO and Defendant Zekulin would become the sole CEO of the Company and would work "to identify a new leader to guide the [C]ompany in its next phase of growth."

However, despite this gauze of normalcy and amicability, later in the day on July 3, 2019, it was reported that Defendant Linton was actually fired, apparently due to a "disconnect

---

[4]     Defendants Zekulin, Linton, Lee, and Saunders are collectively referred to herein as the "Individual Defendants." Defendant Canopy and the Individual Defendants are sometimes referred to herein collectively as "Defendants."

between the near-term execution sought by Constellation [Brands][5] at this point and Linton's focus on investing for the longer term, often at the expense of short-term performance." News of Defendant Linton's termination – rather than amicable agreement to "step down" so that others could focus on the Company's alleged "next phase of growth" – signaled to the market that something may indeed be wrong with Canopy's oft-touted "growth" strategy, which caused shares of Canopy to tumble 16.7% from a high of $41.07 per share on July 3, 2019 to a closing price of $34.21 per share on July 12, 2019, with trading volume of over 40 million shares.

Then, on November 14, 2019, the Company released its financial results for the second quarter of fiscal year 2020, ending September 30, 2019, along with many negative revelations that confirmed that its growth narrative was false, including revenue below the lowest analyst estimate; an EBITDA loss of C$155.7 million; a restructuring charge of C$32.7 million for returns, return provisions, and pricing allowances; an inventory charge of $15.9 million; that "[t]he Q2 2020 gross margin impact of the portfolio restructuring costs is $40.4 million"; and that it was unlikely to meet its previous revenue guidance of C$250 million by the fiscal fourth quarter.[6] In the accompanying press release, Defendant Zekulin explained that "provinces have reduced purchases to lower inventory levels, retail store openings have fallen short of expectations, and Cannabis 2.0 products are yet to come to market." On this news, shares of Canopy fell $2.66 per share, or 14.38%, to close at $15.84 per share on November 14, 2019.

Throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts regarding the Company's business,

---

[5]      Debroop Roy, *Canopy Growth co-CEO Bruce Linton says he was fired*, REUTERS (July 3, 2019), https://in.reuters.com/article/us-canopy-growth-ceo/canopy-growth-co-ceo-bruce-lintonsays-he-was-fired-idINKCN1TY1HV. The *Reuters* article reported that Constellation Brands owned an approximate 56% stake in CGC and controlled four of the six members of the Company's Board of Directors.

[6]      References to "C$" represent figures in Canadian dollars.

operations, and compliance policies. Specifically, Defendants: (i) deceived the investing public regarding Canopy's business, operations, management and the intrinsic value of Canopy securities; (ii) enabled Defendants to artificially inflate the price of Canopy shares; (iii) enabled Canopy insiders to use Company stock as currency to acquire revenues through Canopy's stock-based acquisitions (for example, of Daddy Cann Lesotho PTY Ltd. and Hiku Brands Company, Ltd.) during the Class Period while in possession of material adverse non-public information about the Company; and (iv) caused Plaintiff and other members of the Class to purchase Canopy securities at artificially inflated prices.

The first lawsuit filed in this District raising these allegations was filed on December 11, 2019, on behalf of purchasers of Canopy's publicly traded securities between September 8, 2017 and November 13, 2019. *Bosco v. Canopy Growth Corporation, et al.*, No. 1:19-cv-11341-LAK (S.D.N.Y.). The second lawsuit filed in this District was filed on January 17, 2020 on behalf of purchasers of Canopy's publicly traded securities between September 8, 2017 and November 13, 2019. *Jay v. Canopy Growth Corporation, et al.*, No. 1:20-cv-00485 (S.D.N.Y.). A substantially similar lawsuit was filed on November 20, 2019 in the United States District Court for the District of New Jersey on behalf of purchasers of Canopy securities between June 21, 2019 and November 13, 2019. *Ortiz v. Canopy Growth Corporation, et al.*, No. 2:19-cv-20543-KM (D.N.J.).

On November 20, 2019, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), a notice announcing the filing of the *Ortiz* Action was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day. *See* Nicholson Decl., Ex. 3 . Mr. Pollock is a Class Member who has timely filed this motion within the 60-day period

following publication of the November 20, 2019 notice. *See id.*

## ARGUMENT[7]

### I.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Pursuant to the PSLRA "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a), "[t]he Court enjoys 'board discretion to determine whether consolidation is appropriate.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See, e.g.*, *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id.*; *see also In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-7658, 2018 U.S. Dist. LEXIS 191439, at *7, 2018 WL 5849466 (D.N.J. Nov. 7, 2018).

---

[7]     Unless otherwise noted, all emphasis is added and all citations are omitted.

The two pending actions here make virtually identical allegations on behalf of an identical class of shareholders against the same Defendants. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

## II.    MR. POLLOCK IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD APPOINT HIM LEAD PLAINTIFF

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the plaintiff in the first filed action is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i); s*ee generally Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *See generally Sofran*, 220 F.R.D. at 401. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)    has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of

Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts in this Circuit routinely rely on both of these cases for guidance.[8] After extensive analyses, both courts concluded that this statutory framework sets out a mandatory, strict, and sequential three-step process:

First, the Court must confirm that proper notice has been disseminated pursuant to the PSLRA. *Cavanaugh*, 306 F.3d 726, 729-31; *accord* 15 U.S.C. §§ 78u-4(a)(3)(A)(i); *Sofran,* 220 F.R.D. at 401.

Second, to identify the "most adequate plaintiff," the PSLRA provides that "the court

---

[8]      *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (citing *Cavanaugh* and *Cendant*); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-7281, 2008 U.S. Dist. LEXIS 95506, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) (citing *Cavanaugh* and *Cendant*); *In re Star Gas Sec. Litig.*, No. 04-1766, 2005 U.S. Dist. LEXIS 5827, 2005 WL 818617 (D. Conn. Apr. 8, 2005) (citing *Cavanaugh* and Cendant); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004) (citing *Cendant*); *Sofran*, 220 F.R.D. at 402 (citing *Cavanaugh*); *In re Aol Time Warner Sec. & "erisa" Litig.*, MDL No. 1500, 2003 U.S. Dist. LEXIS 145, 2003 WL 102806  (S.D.N.Y. Jan. 8, 2003) (citing *Cavanaugh*).

shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class … and otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I). During this step, the Court must "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30. The Court "must then focus its attention on *that* plaintiff and determine, *based on the information he has provided in his pleadings and declarations*, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730.[9]

Third, the Court may then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730; *accord Cendant*, 264 F.3d at 262 ("[T]he court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption."). Importantly, though, the PSLRA's presumption may be rebutted "only upon *proof*" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Only if, as a result of this three-step process, the plaintiff with the largest financial interest does not meet the typicality or adequacy requirement, can the Court then proceed to analyze the plaintiff with the next lower stake. *Cavanaugh*, 306 F.3d at 729-730. Importantly, though, in coming to this conclusion, the *Cavanaugh* and *Cendant* courts outlined three critical

---

[9]   In connection with lead plaintiff appointments, courts have consistently held that the Rule 23 considerations are limited to an evaluation of typicality and adequacy. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (typicality and adequacy are the only relevant prerequisites to lead plaintiff selection); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same).

guidelines:

First, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate – a lower showing than the *proof* required of competing movants in the adversarial step three. *Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements *need not be extensive*." Rather, "the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie case* of typicality and adequacy.").[10]

Second, the Court's *prima facie* determinations of typicality and adequacy must be "based on the information [the movant] has provided *in his pleadings and declarations*," and rebuttal evidence introduced by competing movants should specifically not be considered during this second step presumption analysis. *Cavanaugh*, 306 F.3d at 730.[11] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's *complaint and sworn certification; there is no adversary process to test the substance of those claims.*" *Id.* Rather, it is "[a]t the third stage [that] the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id.*[12]

---

[10]   *Accord Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).

[11]   *Accord Cendant,* 264 F.3d at 264 ("In conducting the initial [presumption] inquiry … the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.").

[12]   *Accord Cendant,* 264 F.3d at 263-64 (The "threshold determination" of typicality and adequacy "should be a product of the court's independent judgment, and [] arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted."); *Pirelli*, 229 F.R.D. at 414-15

Finally, the lead plaintiff determination does not depend on the Court's judgment of which party will be the best lead plaintiff for the Class, but rather which movant fulfills the statutory requirements. "[T]he statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case … . That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence … . [H]e is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.[13]

Applying these governing standards, Mr. Pollock is the presumptive "most adequate plaintiff" – and thus his motion should be granted and all other competing motions denied – because he: (A) filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the PSLRA's statutory requirements; (B) has the largest known financial interest in the relief sought; and (C) "otherwise satisfies" the minimal, *prima facie* requirements of Rule 23.

### A.    Mr. Pollock Filed a Timely and Procedurally Complete Motion for Lead Plaintiff

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days

---

(finding no "support [for] the notion that courts have required movants 'to provide adequate information about themselves' in addition to and apart from the PSLRA's own requirements ….").

[13]     *Accord Cendant*, 264 F.3d at 268 ("[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff …. [T]he inquiry is not a relative one."); *Khunt*, 102 F.Supp. 3d at 535-36 ("[A] district court's belief that 'another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'") (citing *Cavanaugh*, 306 F.3d at 732).

from the date of publication to move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A-B). Here, notice was first published by the *Ortiz* Action Plaintiff on *Business Wire* on November 20, 2019, and specified that applications for appointment as Lead Plaintiff were to be made no later than 60 days from that day. *See* Nicholson Decl., Ex. 3.[14] Thus, the notice satisfied the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

In light of the fact that the original notice was published on November 20, 2019, the deadline for application to be lead plaintiff is January 21, 2020. *See* Nicholson Decl., Ex. 3; FED. R. CIV. P. 6; S.D.N.Y. Local Civ. R. 6.4.[15] Mr. Pollock has therefore timely filed his motion. Moreover, with that motion, Mr. Pollock has signed and submitted the required Certification, in which he certified his trading history during the relevant period and confirmed his willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. §§ 78u-4(a)(2)(A). Nicholson Decl., Ex. 1. Accordingly, Mr. Pollock has filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the statutory requirements.

**B.** **Mr. Pollock Has the Largest Known Financial Interest in the Relief Sought**

During the Class Period, as evidenced by his Certification and accompanying Loss

---

[14]     The *Bosco* Action Plaintiff likewise published notice in connection with the *Bosco* Action and identified the same date as the deadline in that matter as well. *See* Nicholson Decl., Ex. 4. Publication by a national press release firm like *Business Wire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (characterizing Business Wire as "a widely-circulated, national, business-orientated news reporting wire service" and accepting publication therein for purposes of satisfying the PSLRA's notice requirement); *Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11-0917, 2011 U.S. Dist. LEXIS 54939, at *2, 2011 WL 2078010 (S.D.N.Y. May 19, 2011) (noting that "[i]n this case, adequate notice was published … in Business Wire, a national wire service").

[15]     The filing date fell on January 20, 2020, but rolled over to January 21, 2020 due to a legal holiday. *See* S.D.N.Y. Local Civ. R. 6.4; FED. R. CIV. P. 6(a)(6).

Charts, Mr. Pollock acquired Canopy securities and incurred substantial losses on its transactions as a result of the materially false and misleading statements and/or omissions issued by the Defendants. *See* Nicholson Decl., Exs. 1-2. ***Specifically, Mr. Pollock has suffered approximately $284,692.73 in losses as a result of his transactions in Canopy securities during the Class Period***. To the best of his knowledge, Mr. Pollock thus has the largest financial interest in the relief sought.

### C.   Mr. Pollock "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate, that *prima facie* determination should be based on the information the movant has provided in its pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. *Supra* §II. Here, Mr. Pollock easily satisfies these minimal, *prima facie* requirements.

### 1.   Mr. Pollock's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims … of the representative parties" are "typical of the claims … of the class." The typicality requirement is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001)

(citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-5667, 2004 U.S. Dist. LEXIS 13898, at \*18, 2004 WL 1637053 (S.D.N.Y. July 15, 2004) (same); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386, at \*25, 2004 WL 1638201 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is easily met because Mr. Pollock's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. Like all the other Class Members, Mr. Pollock (1) acquired Canopy securities during the Class Period; (2) acquired Canopy securities in reliance upon the allegedly materially false and misleading statements and/or omissions issued by Defendants; and (3) suffered damages by acquiring Canopy securities at artificially inflated prices and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Accordingly, because his claims and the claims of other Class Members resulted from the same illegal practices, Mr. Pollock's claims are typical of those of other Class Members.

## 2. Mr. Pollock Will Adequately Represent the Class

Under Rule 23(a)(4), a representative party must also "fairly and adequately protect the interests of the class." Under the PSLRA, the Court's adequacy inquiry is limited to the existence of any conflicts between the interests of the movant, on the one hand, and the members of the class, on the other, and adequacy is satisfied (1) by the absence of potential conflicts between the named plaintiff and the other class members and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, Mr. Pollock is a *prima facie* adequate representative. As evidenced by the injuries suffered by Mr. Pollock, who acquired Canopy securities at prices that were artificially inflated

14

by Defendants' materially false and misleading statements and/or omissions, the interests of Mr. Pollock are clearly aligned with the members of the Class, and there is no evidence of any antagonism between his interests and those of the other members of the Class. To the contrary, Mr. Pollock is an experienced business professional and has been personally investing in the stock market for approximately twenty-nine (29) years. He was born in Belfast, Northern Ireland, moved to the Unites States in 1980, and naturalized in 1990. Now retired, Mr. Pollock previously had a reputable career as a structural drafter, with forty-nine (49) years of experience, including working as a chief draftsman, district engineer, quality control inspector, and quality assurance administrator for various reputable companies, including Boeing and the John Graham Co.

Furthermore, Mr. Pollock has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. *Infra* §III. Thus, Mr. Pollock satisfies the minimal, *prima facie* typicality and adequacy requirements of Rule 23, is thus the presumptive "most adequate plaintiff," and should therefore be appointed lead plaintiff.

### III.   THE COURT SHOULD APPROVE MR. POLLOCK'S CHOICE OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000) (citing Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 685); *see also In re Nortel Networks Corp.*, No. 01-1855, 2002 U.S. Dist. LEXIS 1633, at *2, 2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) (same).

Here, Mr. Pollock has selected KSF to be Lead Counsel for the Class. As reflected in its

firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* Nicholson Decl., Ex. 4 (KSF Firm Resume).

Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions, including in this District. *See id.* (citing *In Re Health Ins. Innovations*, No. 8:17-cv-2186 (M.D. Fla.) (denying in part defendants' motion to dismiss securities class action on June 28, 2019); *Shanawaz v. Intellipharmaceutics Int'l Inc., et al.*, No. 1:17-cv-5761 (S.D.N.Y.) (denying in part defendants' motion to dismiss securities class action on December 17, 2018); *Dougherty v. Esperion Therapeutics, Inc., et al.*, No. 17-1701 (6th Cir.) (reversing and remanding lower court's dismissal of securities class action on September 27, 2018)). Most recently in the Southern District of New York, on June 22, 2018, KSF was found to have "made a substantial contribution to the class" in obtaining a ***$3 billion settlement*** from Brazil's state-controlled petrochemical company in connection with the largest corruption scandal in the history of Latin America, arising from defendants' alleged deliberate overpayments on various construction contracts in return for kickbacks. *See id.* (citing *In re Petrobras Sec. Litig.*, No. 1:14-cv-9662 (S.D.N.Y.)).

KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 3:02-cv-1152-M (N.D. Tex.), which settled for $100 million. KSF's co-counsel in that case was David Boies of Boies

Schiller Flexner LLP, a nationally-renowned litigation and appellate law firm that litigated the *Bush v. Gore* matter before the United States Supreme Court, among others. Prior to settlement, the *Halliburton* case itself had twice been to the United States Supreme Court. In the first instance, plaintiffs won 9-0. In the second instance, the Halliburton defendants challenged the "fraud on the market theory," the fundamental theory on which all class action securities litigation rests. Despite the Halliburton defendants' protestations, the Supreme Court sided with the plaintiffs and upheld that theory. As the aforementioned cases demonstrate, KSF has the requisite experience and knowledge in litigating complex shareholder cases.

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

<u>**CONCLUSION**</u>

For these reasons, Mr. Pollock respectfully requests that this Court: (1) consolidate the related actions; (2) appoint him as Lead Plaintiff in this consolidated action; (3) approve his selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: January 21, 2020                  Respectfully submitted,

                                         **KAHN SWICK & FOTI, LLC**

                                         */s/ Melinda A. Nicholson*
                                         Lewis S. Kahn
                                         Melinda A. Nicholson (MN-6251)
                                         Michael J. Palestina
                                         1100 Poydras Street, Suite 3200
                                         New Orleans, LA 70163
                                         Telephone: (504) 455-1400
                                         Facsimile: (504) 455-1498
                                         Email: Lewis.Kahn@ksfcounsel.com
                                         Email: Melinda.Nicholson@ksfcounsel.com
                                         Email: Michael.Palestina@ksfcounsel.com

                                         -and-

                                         J. Ryan Lopatka
                                         250 Park Avenue, Suite 2040
                                         New York, NY 10177
                                         Telephone: (212) 696-3730
                                         Facsimile: (504) 455-1498
                                         Email: J.Lopatka@ksfcounsel.com

                                         *Counsel for Movant Robert Pollock*
                                         *and Proposed Lead Counsel for the*
                                         *Class*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

*/s/ Melinda A. Nicholson*
Melinda A. Nicholson